L. P. SIGLER *et al.*, Appellants, v. A. J. BOOZE, Respondent.

Kansas City Court of Appeals, March 23, 1896.

1. **Promissory Notes**: PRINCIPAL AND SURETY: PAROL AGREEMENT. The contemporaneous parol agreement between the maker of a nonnegotiable promissory note and his surety thereon in regard to the holding by the maker of the property for which the note is given for the payment thereof, is not binding on the payee nor his assignees and is no defense to the note.

2. ————: MORTGAGE TO THIRD PARTY: CONTEMPORANEOUS PAROL AGREEMENT. A parol agreement of a maker of a nonnegotiable note, who mortgages the property, for which the note was given, to a third party to secure other indebtedness, that said third party would protect the note out of the proceeds of the property, is not admissible in evidence against the payee of said note nor his assignees when the mortgage makes no reference to said note.

3. **Evidence**: PAROL: CONTEMPORANEOUS COLLATERAL AGREEMENT. While parol evidence is admissible to show that an instrument does not express the entire agreement or there was a parol contemporaneous collateral agreement not embraced therein, it can not be used to set up an agreement in conflict with the terms of the writing.

*Appeal from the Gentry Circuit Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*McCullough & Peery* and *Patton & Shoemaker* for appellants.

(1) The court erred in admitting the evidence of a parol agreement between McLain and the defendant, to the effect that McLain was "to keep the steers and sell them and pay the note out of the proceeds." The arrangement testified to was of no force or validity, and gave the defendant no interest in the steers or lien upon them. It was neither a mortgage nor a pledge and could confer no equitable interest in or lien upon

the steers. *Vanstone v. Goodwin*, 42 Mo. App. 39; *Bank v. Durfee*, 118 Mo. 446; Jones Chat. Mtgs., sec. 1; *Vanstone v. Goodwin*, 42 Mo. App. 46; R. S. 1889, sec. 5187; Jones Chat. Mtgs., sec. 2; 2 Black Com. 448; Lawson Contracts, secs. 84, 85; *Hughes v. Menefee*, 29 Mo. App. 203 *loc. cit.; R. S.* 1889, sec. 5176; *Hughes v. Menefee*, 29 Mo. App. 192; *Collins v. Wilhoit*, 108 Mo. 451; *State ex rel. v. Sitlington*, 51 Mo. App. 252, and other cases. (2) The admission of the evidence of a parol agreement prior to and at the time of the execution of the chattel mortgage, was clearly error. *Boyd v. Paul*, 125 Mo. 9; *Deuser v. Hamilton*, 52 Mo. App. 394; *Overstreet v. Beasley*, 60 Mo. App. 319; *Squier v. Evans*, 127 Mo. 514; *Houser v. Andersch*, 61 Mo. App. 19 *loc. cit; Holloway v. Railroad*, 62 Mo. App. 53; *Jackson v. Railroad*, 54 Mo. App. 636; *Dick v. Finnell*, 39 Mo. App. 276; *State ex rel. v. Hoshaw*, 98 Mo. 358, and cases cited; *Tracy v. Iron Works*, 104 Mo. 103; *Jones v. Sheply*, 90 Mo. 307.

*Sallee & Goodman* and *Ed. E. Aleshire* for respondent.

(1) Appellants' principal grievance has for its foundation the action of the court in admitting evidence of an oral agreement as to the conditions upon which McLain executed the mortgage read in evidence. As the note contained clauses which rendered it non-negotiable, it was subject to all the defenses in the hands of an assignee that could have been made against the original payee. *Bank v. Gay*, 63 Mo. 33; *Samstag v. Barker*, 64 Mo. 476; *McCoy v. Green*, 83 Mo. 626. (2) The consideration of a contract and description of the subject-matter are always open to

explanation. *Sexton v. Anderson*, 95 Mo. 373; *Lumber Co. v. Warner*, 93 Mo. 374; *Bunce v. Beck*, 43 Mo. 266; *Edwards v. Smith*, 63 Mo. 119; *Skinker v. Haagsma*, 99 Mo. 208; *Bowen v. Bowen*, 90 Mo. 184; *Estes v. Fry*, 94 Mo. 266; *Welch v. Edmisson*, 46 Mo. App. 282; *Bray v. Adams*, 114 Mo. 486; *Ellis v. Harrison*, 104 Mo. 270. (3) It is further contended by appellants that the court erred in admitting testimony to the effect that it was agreed at the time defendant became security upon the note in suit that the steers for which the note was given should stand as security for the debt, and that the note should be paid out of the proceeds of their sale. The court did not err in admitting this evidence. There may be a mortgage by parol as between debtor and creditor and principal and surety. *Sloan v. Coburn*, 26 Neb. 60; *Bales v. Wiggins*, 37 Kan. 44; *Bardwell v. Roberts*, 66 Barb. (N. Y.) 433. Such mortgages are always good as between the parties. Nor is there anything in *Vanstone v. Goodwin*, 42 Mo. App. 39, which militates against this position. (4) McLain had the undoubted right to elect what should be done with the surplus arising from the sale of the cattle after the discharge of the notes described in the mortgage. *Beck v. Haas*, 111 Mo. 264; *Waterman v. Younger*, 49 Mo. 413; *Gantner v. Kemper*, 58 Mo. 567; *Middleton v. Frame*, 21 Mo. 312.

GILL, J.—At the dates herein mentioned plaintiffs were engaged in the banking business, at Davis City, Iowa, under the firm name of Citizens Bank, and at Leon, under the name of Farmers and Traders Bank. For and in behalf of the Citizens Bank, they brought this action, on a nonnegotiable promissory note for $441.25, dated May 15, 1890, and due one year after date. The note was executed by defendant A. J.

Booze and one D. F. McLain to D. S. Booze, the payee. Shortly after its execution D. S. Booze sold and transferred the note to the State Bank of Prairie City, Iowa, who, in turn, and before its maturity, sold and assigned it to the plaintiffs.

The defendant admitted the execution and assignment of the note, but sought mainly to defeat the action on the following grounds:

He alleged in the answer, and introduced evidence tending to prove, that defendant executed this note as surety for D. F. McLain, on May 15, 1890, for the purchase price of eighteen head of steers, bought from D. S. Booze; that at the time he so signed, McLain agreed with him that he would hold the said steers until ready for market, and that he (McLain) would sell them and pay this note out of the proceeds; that thereafter, about the first day of October, 1890, the plaintiff, Sigler, acting for his firm, called upon McLain and demanded or requested that he execute a chattel mortgage on a large amount of live stock then owned by him, including the eighteen head of steers above mentioned, to secure his indebtedness to the plaintiff bank; that said McLain advised Sigler that said eighteen head of steers were not paid for, and that he would not include them in the mortgage, unless plaintiffs would agree to take up the note sued upon when it matured (May 15, 1891), and when the eighteen head of steers were sold, pay it out of the proceeds; that thereupon plaintiff agreed with him that, if he would include the eighteen head of steers in the chattel mortgage, to secure a part of their indebtedness, they would take up the note before or at maturity, and when the stock mortgaged were sold, would apply the proceeds, first, to the payment of the note sued upon; and the balance to the payment and discharge of any other sum that might be owing by said McLain to said Citizens Bank; that in

consideration of this agreement, McLain did execute the chattel mortgage conveying to plaintiffs a large amount of live stock, including the eighteen head of steers, to secure their indebtedness; that afterward, in September, 1891, said stock, including said steers, were sold and the proceeds paid over to plaintiffs, and that the proceeds of said eighteen head of steers amounted to more than the principal and interest of said note.

In another count of the answer, it was alleged that the note in suit was paid through and by virtue of an arrangement between said McLain and the plaintiffs, under which McLain, being largely involved and owing plaintiffs this and other notes, turned over to plaintiffs all his property, real and personal (except some household goods) in full payment and satisfaction of this and all other indebtedness.

At the trial the defendant was permitted, over plaintiff's objections, to prove both parol agreements set up in the answer. The plaintiffs objected to the evidence of the arrangement between defendant and McLain, because it gave defendant no lien upon the cattle, was of no validity whatever, and knowledge of it could in no way bind the plaintiffs. They objected to proof of the parol agreement at the time of the execution of the mortgage, by which defendant claimed they agreed with McLain that a part of the property conveyed in the mortgage should be applied to an entirely different purpose from that named in the instrument, because the terms of the written instrument could not be so varied or contradicted.

The court overruled these objections and allowed McLain and his son to testify that when Sigler came to get the mortgage, they made a parol agreement that if McLain would include the eighteen head of steers in the mortgage to secure the $7,000 worth of plaintiff's

notes described in it, plaintiffs would, in the future, buy or take up the note in suit (which did not mature for seven and a half months, and which was then owned by the State Bank of Prairie City, Iowa), and when the cattle and other stock conveyed in the mortgage were sold, would first pay this note out of the proceeds of such sale. The chattel mortgage was introduced in evidence by the defendant and showed that all of the stock described therein was conveyed to the plaintiffs, under their firm name, to secure six notes for $1,060, $1,120, $1,180, $1,240, $1,300, and $1,360, respectively; and also "any other note or notes given to the Citizens Bank of Davis City, Iowa, or Farmers and Traders Bank of Leon, Iowa, now due, or hereafter given," and contained the usual clauses as to the disposition of the proceeds of the sale of the property to the payment of the notes described in it. McLain in his testimony stated that the note sued upon was not included in the chattel mortgage; and that the verbal agreement he had with Sigler about paying it out of the proceeds of the sale of the cattle, was just before the execution of the mortgage, and was a part of the negotiation between him and Sigler for the mortgage.

Among others, the court at defendant's request, gave the following instruction:

"No. 1. If the jury find from the evidence that at the time of the execution of the note in suit, it was agreed between D. F. McLain and defendant A. J. Booze, that if A. J. Booze would sign the same as surety for said McLain, that the steers for which said note was given were to stand good for the payment of the same, and that McLain should hold said steers until they were ready for the market and said note should be paid out of the proceeds of the sale of said steers; that McLain refused to mortgage said steers or

have them included in the mortgage, unless Sigler would take up or pay said note out of the proceeds of said cattle when sold, and that Sigler at the time of the execution of the mortgage to plaintiff, read in evidence, agreed that he would take up or pay said note out of the proceeds of the sale of said cattle, and that said steers were included in said mortgage because of such agreement, that the proceeds of the sale of said steers should be applied to the discharge of said note, and that the proceeds thereof, when sold, were equal to or greater than the amount of said note, and that the proceeds of said sale were paid to plaintiff, then the jury will find for the defendants."

There was a verdict and judgment for defendant and plaintiffs appealed.

We fail to see how any defense to this note can be predicated on the agreement between McLain, the principal, and defendant Booze, the surety, made at the time the note was executed. It was a mere promise by McLain that he (McLain) would protect the surety; that he would pay the note out of the proceeds of the cattle when they should be sold. There is no pretense that D. S. Booze, the payee of the note, had any part in this agreement. He was not bound, under any rule of law, to look to the proceeds of the cattle, at a future sale, for his pay; and, as said payee, was not legally restricted to such means of payment, neither were his assignees. Since the note was not negotiable, they took the same, burdened with the like defenses and no more that existed against the assignor. The agreement between said principal and his surety was neither a mortgage nor a pledge, legal or equitable, that could affect the title or interests of the payee of the note or his indorsees. The testimony then offered to prove that agreement was, in our opinion, improp-

erly admitted and was probably prejudicial to the plaintiff's case.

A similar and more serious error was committed by the trial court when defendant was permitted to introduce evidence of the alleged parol agreement had between McLain and plaintiffs contemporaneously with the execution of the mortgage. This action by the court clearly violated the elemental rule that parol evidence can not be admitted to contradict or vary a written instrument. The chattel mortgage executed by McLain to plaintiffs, October 1, 1890, in terms provided that the eighteen head of cattle and other property therein described, were conveyed to plaintiffs as security for some six notes therein named and also such other notes given by the mortgagor to the Citizens Bank of Davis City, Iowa, or Farmers and Traders Bank of Leon, Iowa, as were then due or thereafter given; that the proceeds of said property, when sold, should be devoted to the payment of those obligations. But defendant was permitted to introduce testimony tending to prove that during the negotiations for the mortgage, it was orally agreed between the mortgagor and mortgagees, that the eighteen head of cattle covered by the mortgage were to be held and used for the security and payment of an entirely different debt. The written mortgage, in clear and unequivocal language, declared that said cattle, and the proceeds thereof, in the event of sale, were transferred to the plaintiffs as security for the payment of certain designated notes aggregating nearly $7,000, and such other notes as had been or were thereafter given to plaintiffs, and clearly the note in suit was not one of these. It was proper to introduce oral evidence as to what other notes McLain had given or thereafter gave to the two banks (which were then owned and operated by plaintiffs); and it was shown that they held such

·other notes, aggregating a large amount.   But under cover of such general terms of description, it was not proper to prove by parol testimony that another note, entirely outside of such descriptive words, was intended to be secured by the mortgage.   The note in suit was not, at the date of the mortgage, held by plaintiffs; it was then the property of another party. It was not in terms payable to the Citizens Bank, or to the Farmers and Traders Bank; it was not then due, nor was it thereafter given.   So that it is clear that it was not included in the terms of the mortgage.

In support of the court's action, in admitting evidence of this contemporaneous agreement, it is suggested that, as it was part of the entire contract, a portion only of which was reduced to writing, then oral evidence was competent to establish the part omitted from the writing.   While it is true that where the instrument does not express the entire agreement, or there was a parol contemporaneous collateral agreement, not embraced therein, oral evidence is admissible to prove the portion omitted, yet this rule is subject to the well understood qualification that such outside agreement *shall not conflict with the terms of the writing*.   Browne on Parol Ev., secs.  50,  51–81;  2 Wharton Ev. [3 Ed.], sec. 937; 1 Greenl. Ev. [14 Ed.], sec. 284a, note b; *Bassher v. Forbes*, 36 Md. 154–166; *Bonney v. Morrill*, 57 Mo. 368–373.

The admission, then, of the evidence hereinbefore referred to and the giving of the instruction based thereon and which is quoted in the statement, constituted reversible error.  The judgment will be reversed· and cause remanded.    All concur.