**BAUDOIN v. GIROUARD.**

No. 1557.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1935.

Bailey & Mouton and Dan Debaillon, all of Lafayette, for appellant.

F. J. Samson, of Abbeville, for appellee.

LE BLANC, Judge.

This is a suit on a plain promissory note in the sum of $739.10, made and subscribed by the defendant, L. Whitney Girouard, on December 9, 1931, and made payable to the order of the plaintiff, Alfred Baudoin, October 1, 1932. The note bears interest at the rate of 8 per cent. per annum and contains a stipulation regarding attorney's fees in case the same had to be placed in the hands of an attorney at law for collection after maturity.

The defense is that the note is without consideration for the reason that it was given to the plaintiff after having been exacted as a secret consideration for his acceptance, as one of the creditors of Ernest Girouard, of a proposition to compromise his indebtedness with all of his creditors on a basis of 25 cents on the dollar. As the giving of the said note gave the plaintiff an unfair and secret advantage over all other creditors, it is urged that the same was illegal, against good morals and against public policy, and therefore null and void, and cannot be enforced.

As a result of a trial of the merits on an agreed statement of facts before a specially appointed judge ad hoc, there was judgment in the lower court in favor of the plaintiff for the full amount of the demand, including interest and attorney's fees, and the defendant has appealed.

We think it is well to note, in the first place, that the defendant herein, L. Whitney Girouard, is the son of Ernest Girouard, the debtor, whose indebtedness was being compromised with his creditors.

The agreed statement of facts shows that on October 28, 1931, Ernest Girouard's business affairs were heavily involved. He owed more than $30,000 and did not have near enough assets to meet that amount. The three principal creditors were the Bank of Abbeville, the Crystal Oil Refining Company, and the plaintiff, Alfred Baudoin.

On the date mentioned, he addressed a joint letter to these three creditors, informing them of his financial embarrassment and of his inability to pay them in full. His letter makes mention of the fact that the Bank of Abbeville and the Crystal Oil Refining Company had already obtained judgment against him, which, if permitted "to rest," as he expresses it, would soon prefer them over his other creditors. He then tells them that he has decided to offer all his creditors a payment of 20 cents on the dollar in full settlement of his indebtedness, and that all his other creditors will accept his offer if they, the three addressed, will likewise accept.

As a result of the writing of that letter, a conference with these three creditors was had shortly thereafter at which the plaintiff was represented by his son, Theophile Baudoin, and the defendant represented his father as his agent. The Bank of Abbeville was represented by its president, Mr. L. O. Broussard, and the Crystal Oil Refining Company by its attorney, Mr. J. O. Broussard. Mr. J. E. Kibbe, who was Mr. Ernest Girouard's attorney, was also present.

At that conference, the proposition of a settlement of Mr. Girouard's indebtedness was further discussed and the offer of compromise was raised from 20 to 25 per cent. Both the Bank of Abbeville and the Crystal Oil Company, through their respective representatives, then and there accepted, and Mr. Theophile Baudoin, while saying that it was acceptable as far as he was concerned, stated that he would have to submit it to his father. There had been a written form of acceptance prepared for each of these three creditors on a single sheet of paper, and whilst it is not certain whether the two Messrs. Broussard signed the same for their principals at this conference, it does appear that they signed that same day.

After leaving the conference just referred to, the parties attending, save the two Messrs. Broussard, went to the office of the plaintiff at the Home Grocery Company. The same proposition which the two others had already accepted was made to the plaintiff, whereupon he refused to do

so, saying that he would rather foreclose against the creditor's property and take a loss if necessary. It was then, after a bit more discussion, that the defendant offered to give the plaintiff his personal note to make up the difference on a basis of settlement of the plaintiff's claim at 30 cents on the dollar. This was agreed to by the plaintiff, and two or three days afterwards, the note, which is the one forming the subject of this controversy, was brought to the plaintiff, who was sick in bed at his home, and given to him. He then signed the form of acceptance which had already been signed by the other two creditors, the form showing on its face that, like the others, he was settling at 25 per cent. of the amount of his claim. The agreed statement of fact recites that both Mr. L. O. and Mr. J. O. Broussard would testify, if sworn, that they accepted the proposition to settle at 25 per cent. and signed the form of release believing that all three principal creditors would receive the same settlement, and that they did not know until this suit was filed that the note sued on had been given to the plaintiff by the defendant. The statement further shows that Ernest Girouard later negotiated a loan with the First National Bank of Lafayette, and that, from the proceeds thereof, these three creditors were paid the respective amounts due them on a settlement at 25 per cent.

■ The agreement initiated on the day that Ernest Girouard addressed his letter making an offer of settlement to his three principal creditors, and which was finally consummated after the last of these three had signed a formal acceptance and had been paid the respective amounts due them thereunder, bears all the earmarks of the common-law agreement known as a "composition with creditors." This agreement is defined in Ruling Case Law, vol. 5, p. 868, par. 1, as "An agreement between an insolvent and embarrassed debtor and his creditors, whereby the creditors in consideration of an immediate payment agree to accept a dividend less than the whole amount of their claims, to be distributed pro rata, in discharge and satisfaction of the whole debt." The distinction is then pointed out between such an agreement and one of "accord and satisfaction." It is stated that "an accord and satisfaction is ordinarily limited, when applied to agreements between creditor and debtor, to those between a debtor and *a single creditor;* while a *composition is an agreement*

*not only between the creditors and the debtor, but also between the creditors themselves that each shall receive the sum or the security which the deed of composition stipulates to be paid and given and nothing more."*

The text continues in paragraph 2 as follows:

"Every composition deed, in its spirit, if not in its terms, is an agreement between the creditors themselves, as well as between them and the debtor. The creditors in reality agree, in consideration of an immediate pro rata payment of their claims, to discharge or release the debtor from further liability. So the rule has been formulated that in order to sustain an agreement to accept part of a liquidated indebtedness in satisfaction of the whole, as a composition agreement, it must appear that the creditor so stipulated not only with the debtor, but also with the other creditors. The chief requisites in agreements of this kind is that the parties act in good faith, and that there are no fraudulent or secret preferences.

"Par. 5. The general principle has been long settled in England and in this country, that a secret agreement, which induces a creditor to agree to a composition by the promise of a preference, or of some undue advantage, over the other creditors, is utterly repugnant to the composition agreement, and, from its fraudulent nature, is void and will be set aside by ·the suit of any of the parties. The very essence of a composition agreement is that all creditors come in on terms of equality; and that equality would be destroyed if the secret agreement were given effect. *Hence it is that a note or other security given by a debtor for the purpose of inducing a creditor to consent to a composition or any security taken for any amount beyond the composition agreed on, or even for that sum, better than that which is common to all, if unknown to the other creditors, is void and inoperative."* (All italics is ours.)

■ Under the principles enunciated, there can be no doubt but that if the note herein given to the plaintiff had been the debtor's instead of that of his son, L. Whitney Girouard, it would be a void obligation and unenforceable, being one that is tainted with fraud. The law is the same in Louisiana as noted in the decision of the Supreme Court in the case of T. D. Weaver v. T. Waterman, 18 La.Ann. 241. There, the defendant who was a member of the

debtor firm which had compounded a settlement with its creditors on a basis of 75 per cent. payable in three installments, represented by three notes, had given the plaintiff, who compelled him to do so before signing the agreement of composition, a fourth note, the amount of which, added to the other three, would have paid the plaintiff in full. The plaintiff was denied recovery apparently on the ground that this fourth note had been given with a view of perpetrating a fraud and of obtaining an illegal preference over the other creditors. This decision is cited with approval in the case of John T. Hardie's Sons & Co. v. Scheen et al., 110 La. 612, 34 So. 707, in which the court quotes from Story on Equity Jurisprudence, principles of law, the same almost as those herein quoted from Ruling Case Law.

So much, therefore, for the cases in which the obligation or security sued on is that of the composing debtor himself. Now, what about the validity of the obligation given by a third person, as that of the son of the debtor for instance, the one given in this case?

On this point, in pursuing the subject further in Ruling Case Law, we find the following pertinent statement at page 872 in the volume already referred to: "The fact that the agreement to pay the excess is not made by the debtor, but by a third person, does not divest the transaction of its fraudulent character, for this is as much a fraud on the creditors as if the agreement were directly between the debtor and such creditor."

In support of this text, the case of Kullman v. Greenebaum, 92 Cal. 403, 28 P. 674, 27 Am.St.Rep. 150, is cited. While it appears from the reported decision that the case was not one in which the holder of the obligation was suing the obligor, but that it was a suit to set aside the composition agreement itself, it is made plain that the underlying reason for setting aside the whole transaction as fraudulent is the utter lack of good faith on the part of the creditor who obtained an advantage over the others by leading them into an agreement among themselves which they would not have consented to had the true facts been disclosed to them. It is the act of the creditor who secures the unfair advantage, and who breaks faith with the others, which the law reprobates and he will not be permitted to profit thereby. In Corpus Juris, vol. 12, p. 289, § 88, the principle is laid down as follows: "The fraud of the creditor is the vital point, and consequently the operation of the above rules will not be affected by the fact that the secret preference does not affect the debtor's assets, as when the preference is given by a third person, either with or without the knowledge or consent of the debtor."

Then in the following section is found this significant statement: "Authorities are not wanting in support of the doctrine that a *promissory note,* or a bond, guaranty or other obligation, such as a check, a mortgage or a judgment note, *given to a creditor by a debtor or by a third person on his behalf, with the object of securing to the recipient a secret consideration over other creditors, is void, both in law and in equity in the hands of the payee* or of one who is not a bona fide holder for value, *and cannot be enforced by either, if the transaction was not known to the other creditors."* (Italics ours.)

This, it seems to us, disposes of the issue presented in this case. Every contention advanced by the plaintiff is answered by the italicized words of this text. The promissory note executed by the defendant in this case, was given by him to one of his father's creditors after the latter had refused to enter into the composition agreement and had threatened to foreclose against his father's assets. The note, given in view of this threat, secured for this creditor a secret consideration over the other creditors who did not know of this transaction and who would not have agreed to the composition had they known of it. In the hands of this plaintiff, the payee, the note is void and it cannot be enforced.

The judgment of the lower court which decreed differently is erroneous, and it will therefore be reversed.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed, set aside, and annulled, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the defendant, L. Whitney Girouard, and against the plaintiff, Alfred Baudoin, dismissing the latter's suit, and rejecting his demand at his costs.